**Angel MARTINEZ, Plaintiff,**

v.

**P.A. WILLIAMS R., Defendant.**

**No. 04 CIV.1938(WCC).**

United States District Court,
S.D. New York.

Dec. 17, 2004.

Angel Martinez, Ossining, NY, Pro se.

Eliot Spitzer, Attorney General of the State of New York (John E. Knudsen, Asst. Attorney General, Of Counsel) New York City, for Defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior . District Judge.

Plaintiff Angel Martinez, proceeding *pro se*, commenced this action against defendant P.A. Philip Williams, a physician assistant who is an employee of the New York State Department of Correctional Services ("DOCS"). Martinez alleges that he suffered "multiple heart attacks" which Williams failed to diagnose. Martinez further alleges that his undiagnosed heart attacks were the cause of a "black out" which resulted in an eye injury. This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth Amendment to the United States Constitution, by subjecting plaintiff to the cruel and unusual punishment of failing to provide him with adequate medical care. Defendant now moves to dismiss plaintiff's Complaint pursuant to FED. R. CIV. P. Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant contends that the Complaint should be dismissed on two asserted grounds: (1) plaintiff's failure to exhaust his administrative remedies; and (2) the untimeliness of the action, which was commenced after expiration of the three-year statute of limitations. For the reasons stated hereinafter, defendant's motion to dismiss is granted.

## BACKGROUND

### I. *Plaintiff's Factual Allegations*

Plaintiff is incarcerated at the Sing Sing Correctional Facility ("Sing Sing") serving a twenty-year sentence. (Complt.¶ 2.) While incarcerated, plaintiff complained of pain in his chest and right arm.[1] (*Id.* ¶ 11.) On January 21, 2000, defendant conducted an examination of plaintiff's chest and right arm, which plaintiff alleges was a "superficial examination." (*Id.*) Defendant prescribed the medication "issorbide hintrate" (sic) to relieve plaintiff's pain; however, according to plaintiff the medication did not relieve his pain and suffering. (*Id.* ¶ 12.) Plaintiff alleges that he filed numerous sick-call requests to see defendant over several weeks, but was "ignored." (*Id.*) On an unspecified date in February 2000, plaintiff was examined by

---

1. According to the Complaint, "[p]laintiff's medical records would indicate that in October/November 1999, numerous requests were submitted to the facility infirmary to see a doctor about the severe pain in his chest and right arm." (Complt. ¶ 1 n. 1.)

defendant a second time and continued to complain of severe chest and arm pain and also that the medication was not relieving his pain. (*Id.* ¶ 13.) Defendant suggested that plaintiff continue to take the prescribed medication. (*Id.*) However, plaintiff alleges that defendant "failed to properly examine or diagnose plaintiff's pain and suffering." (*Id.*)

On February 7, 2000, while exiting his cell, plaintiff alleges that he "blacked out" and fell to the floor unconscious. (*Id.* ¶ 14.) As a result of the fall, plaintiff was taken to the emergency room of the institution, where it was determined that he sustained a severe right eye injury. (*Id.*) Plaintiff contends that defendant improperly diagnosed his "black out" "as the result of a common cold or 'flu virus' ... [and that he] was then given flu medication and an ice pack for his eye injury, and was placed on medical keep-lock status for five (5) days." (*Id.*) Plaintiff further alleges that he continued to complain about the pain in his chest, arm and right eye, but "in spite of his constant requests for a full examination to relieve him of his pain and suffering, P.A. Williams was 'deliberately indifferent' to plaintiff's serious medical needs." (*Id.* ¶ 15.)

On February 8, 2000, plaintiff again requested to be taken to the emergency room as he was suffering from pain in his chest and right eye. (*Id.* ¶ 16.) Plaintiff saw a nurse in the emergency room and alleges that the only examination conducted at that time principally consisted of timing his pulse rate and taking his temperature. (*Id.*) According to plaintiff, no extensive physical tests were conducted.

On February 11, 2000, plaintiff was examined by Dr. Halk at Sing Sing, who, upon examination, transferred him to an outside hospital (St. Agnes in White Plains, New York), where he was eventually transferred to Westchester Medical Center for further examination. (*Id.* ¶¶ 17, 18.) Plaintiff's right eye injury was diagnosed as a fracture, and he underwent two surgeries to reconstruct his face and correct the damage of his eye injury. (*Id.* ¶ 19.) In addition, plaintiff alleges that the doctors at Westchester Medical Center determined that his "black out" was triggered or due to a heart attack, and upon examination, the doctors discovered plaintiff had three blocked coronary arteries that were causing the severe pain in his chest and arm. (*Id.* ¶¶ 19, 20.) Medication was prescribed to alleviate the coronary artery condition.

On February 21, 2000, plaintiff was discharged back to Sing Sing where he remained in the facility hospital until March 20, 2000. (*Id.* ¶ 21.) Plaintiff is currently back in general population at Sing Sing and allegedly continues to suffer from constant pain in his chest and arm, and is taking prescribed medication. (*Id.*)

Plaintiff seeks "an order declaring that the defendant acted in violation of the United States Constitution," "an injunction compelling defendants [sic] to provide adequate medical treatment" and $350,000 in compensatory damages. (*Id.* ¶¶ 22, 23, 24.)

## II. *Procedural History*

Plaintiff previously brought an action (*Martinez v. Williams,* No. 01 Civ. 2642 (S.D.N.Y.)) against defendant based on the alleged misdiagnosis of plaintiff's medical condition and the ensuing consequences. *See Martinez v. Williams,* 186 F.Supp.2d 353 (S.D.N.Y.2002) ("*Martinez I* "). *Martinez I* was dismissed without prejudice by this Court for failure to exhaust administrative remedies. On November 20, 2002, this Court issued an Order reopening *Martinez I* to permit plaintiff to file an Amended Complaint; however, that Order was rescinded and the action was dis-

missed without prejudice. (Complt.¶ 7.) Plaintiff was instructed that to pursue his claim, he must first exhaust his administrative remedies and then file a new action. (*Id.;* Order dated December 6, 2002 ("Final Order").)

On July 10, 2003, more than seven months after the issuance of the Final Order (and more than three years after the events at issue), plaintiff filed a grievance pursuant to the state prisoner grievance procedure. (Complt., Ex. B; Def. Mem. Supp. Mot. Dismiss at 4.) Plaintiff's grievance was denied because it was not filed within fourteen days of the Court's Final Order as prescribed by Directive # 4040, and plaintiff failed to offer any mitigating circumstances that would allow acceptance of the late grievance. (Def. Mem. Supp. Mot. Dismiss at 4; Complt., Ex. B.) After twice attempting to file the grievance and being told that "the mitigating circumstances presented are not sufficient to file the grievance," plaintiff sent a "Grievance Appeal" to Superintendent Fischer, which was also rejected for failure to present mitigating circumstances explaining the delay. (Def. Mem. Supp. Mot. Dismiss at 4 (citing August 6, 2003 Memorandum from Paul Kikendall, Acting Superintendent).) Lastly, prior to filing this action, on August 15, 2003, plaintiff sent correspondence to Thomas Eagen, the Director of the Inmate Grievance Program, regarding the rejection of his grievance. (Pl. Aff. Opp. Mot. Dismiss at 2; Def. Mem. Supp. Mot. Dismiss at 4.) Eagen responded via letter and explained that the grievance was rejected because it was not filed within fourteen days of the Court's Final Order and plaintiff failed to offer any mitigating circumstances for the delay. (*Id.* (citing September 9, 2003 letter from Eagen).)

Shortly thereafter, plaintiff initiated the present action, the Complaint being received by the *Pro Se* Office on December 15, 2003. Defendant responded to the Complaint with a motion to dismiss which is now before this Court.

## DISCUSSION

### I. *Defendant's Motion to Dismiss For Failure to State a Claim*

#### A. *Standard of Review*

The Second Circuit has concluded that "failure to exhaust administrative remedies is not a jurisdictional predicate" under the Prison Litigation Reform Act ("PLRA"). *Richardson v. Goord,* 347 F.3d 431, 433 (2d Cir.2003) (per curiam). Consequently, a motion to dismiss for failure to exhaust all administrative remedies "is analyzed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Petit v. Bender,* No. 99 Civ. 0969, 2003 WL 22743485, at *3 (S.D.N.Y. Nov. 19, 2003).

On a motion to dismiss pursuant to FED. R. CIV. P. Rule 12(b)(6), a court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds; Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.). The issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). In assessing the le-

gal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (citations omitted); *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff describes, are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). However, *pro se* complaints "are held to 'less stringent standards than formal pleadings drafted by lawyers,' and are to be construed liberally on a motion to dismiss." *Van Ever v. N.Y. State Dep't of Corr. Services,* No. 99 Civ. 12348, 2000 WL 1727713, at *2 (S.D.N.Y. Nov. 21, 2000) (citations omitted); *see also Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993). Nevertheless, *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (quotations omitted); *see also Olle v. Columbia University,* 332 F.Supp.2d 599, 607 (S.D.N.Y.2004); *Scott v. Gardner,* 287 F.Supp.2d 477, 483 (S.D.N.Y.2003).

### B. *Whether Plaintiff's Claim Should Be Dismissed For Failure to Exhaust Administrative Remedies*

Under the PLRA a prison inmate must exhaust all available administrative reme-dies prior to bringing a suit in federal court under § 1983. *See Booth v. Churner,* 532 U.S. 731, 742, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). In relevant part, the PLRA provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Further, the Second Circuit has explicitly held that claims of inadequate medical treatment are included in "prison conditions" within the PLRA framework. *Neal v. Goord,* 267 F.3d 116, 119–21 (2d Cir.2001). It should be noted that, " [e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.' " *Finger v. Superintendent McFinnis,* No. 99 Civ. 9870, 2004 WL 1367506, at *3 (S.D.N.Y. June 16, 2004) (quoting *Porter,* 534 U.S. at 524, 122 S.Ct. 983) (citations omitted).

Under New York Law, each state correctional facility has implemented a grievance procedure by which prisoners can file complaints and appeal decisions of grievance resolution committees. *See Cross v. Corr. Sergeant Radmoski,* No. 99 Civ. 2186, 2004 WL 345581, at *2 (S.D.N.Y. Feb. 23, 2004) (citing N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. tit. 7 § 701 *et seq.*). New York's Inmate Grievance Procedure ("IGP") is a three-level process that prisoners must exhaust prior

to filing a complaint in federal court.[2] *See Nelson v. Rodas*, No. 01 Civ. 7887, 2002 WL 31075804, at *2 (S.D.N.Y. Sept. 17, 2002); *see also* N.Y. CORRECT. LAW §§ 138–39; N.Y. COMP. CODES R. & REGS. tit. 7 § 701 *et seq.* An inmate must pursue his grievance to the highest administrative level, which includes all appellate remedies, to be deemed to have exhausted his administrative remedies. *See Petit*, 2003 WL 22743485, at *4 (citations omitted). However, New York's administrative code provides "exceptions" to the fourteen-day limit [3] for filing an Inmate Grievance Complaint Form "based on mitigating circumstances." N.Y. COMP. CODES R. & REGS. tit. 7 § 701.7(a)(1).

■■■ An inmate must exhaust all administrative remedies prior to bringing a claim in federal court, even if the administrative action is futile. *See Santiago v. Meinsen*, 89 F.Supp.2d 435, 441 (S.D.N.Y. 2000). However, failure to exhaust administrative remedies is an affirmative defense that must be pled by defendants. *See Jenkins v. Haubert*, 179 F.3d 19, 28–29 (2d Cir.1999). The Second Circuit has suggested a three-part inquiry in cases where a prisoner plaintiff opposes a defendant's claim that the prisoner has failed to exhaust available administrative remedies as required by the PLRA.

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

*Hemphill*, 380 F.3d at 686 (internal citations omitted) (quotations omitted).

When *Martinez I* was dismissed without prejudice, this Court instructed plaintiff that he must exhaust his administrative remedies prior to bringing a new action in federal court. At that point, administrative remedies were still available to plaintiff, as he had fourteen days from the Final Order in which to file a grievance with DOCS. However, plaintiff waited almost seven months before even attempting to file a grievance, thereby making his grievance untimely. Furthermore, plaintiff has not offered any arguments or evidence that would excuse his failure to exhaust the proper administrative remedies.

> Administrative remedies that have not technically been exhausted may nonetheless be waived or estopped under ex-

---

**2.** For a comprehensive discussion of New York's administrative grievance procedures, *see generally Cruz v. Jordan*, 80 F.Supp.2d 109, 117–119 (S.D.N.Y.1999) and *Hemphill v. New York*, 380 F.3d 680, 682–83 (2d Cir. 2004).

**3.** Prisoners must file a grievance complaint form within fourteen days after the occur-

rence of the incident in question. N.Y. COMP. CODES R. & REGS. tit. 7 § 701.7(a)(1). If a complaint was improperly brought in federal court before exhausting administrative remedies, the inmate must file a grievance within fourteen days of the Court Order dismissing the action. (Complt., Ex. B.)

ceptional circumstances, such as where "(1) an inmate was led to believe by prison officials that his alleged incident was not a 'grievance matter' and assured that his claims were otherwise investigated . . . (2) an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts, and (3) the state's time to respond to the grievance has expired."

*Petit*, 2003 WL 22743485, at *6 (quoting *O'Connor v. Featherston*, No. 01 Civ. 3251, 2002 WL 818085, at *2–3 (S.D.N.Y. Apr. 29, 2002) (collecting cases)) (citations omitted). There have been no allegations that defendant acted in a manner that inhibited plaintiff's ability to exhaust his administrative remedies; therefore, we find no basis for estopping defendant from raising plaintiff's failure to exhaust as a defense. The IGP supervisor found no mitigating circumstances which would excuse the long delay in filing the grievance. Consequently, we are now required to decide whether plaintiff's failure to comply with administrative procedural requirements should be waived on the basis of mitigating circumstances.[4] *See Giano v. Goord*, 380 F.3d 670, 676 (2d Cir.2004).

█ Plaintiff alleges that his delay in exhausting his administrative remedies was the result of his poor English, limited education and inferior knowledge of the law. (Pl. Aff. Opp. Mot. Dismiss at 3.) In addition, plaintiff contends that he was unaware that he could file another complaint until another inmate explained what "without prejudice" meant. While this Court is acutely sympathetic to plaintiff's situation, we find no mitigating circumstances that would justify excusing plaintiff's failure to exhaust his administrative remedies. Plaintiff's access to the appeals process was not obstructed or denied, nor was plaintiff misled or tricked by an officer. Rather, plaintiff simply failed to pursue his administrative remedies in a timely manner. *See Petit*, 2003 WL 22743485, at *6.

█ Additionally, in *Martinez I*, this Court specifically informed plaintiff that in order to proceed with his complaint in federal court, he must first exhaust his administrative remedies. This was a clear suggestion that plaintiff proceed with filing a grievance, even though he might not have understood the legal term "without prejudice." Yet plaintiff failed to attempt to file a grievance until seven months after the Final Order. Plaintiff cites *Giano v. Goord* for the proposition that "[i]f a prisoner reasonable [sic] believes he has properly pursued his complaint, the 'exhaustion' requirement does not automatically doom his case." (Pl. Mem. Opp. Mot. Dismiss at 5 (citing *Giano*, 380 F.3d at 676).) In *Giano*, the Second Circuit stated that in the PLRA context they would not "attempt any broad statement of what constitutes justification" in deciding whether to allow a § 1983 action to be brought where a prisoner's failure to follow procedural requirements results in grievance procedures no longer being available. 380 F.3d at 678. However, while the court found mitigating circumstances in *Giano*, the relevant facts were very different from those here. In the cases in which courts have found mitigating circumstances, plaintiffs have alleged facts that explain and justify the delay in filing a grievance; the explanations are more than just a failure to timely file the grievance. *See, e.g., id.*

---

**4.** Since the exhaustion requirement of the PLRA is not jurisdictional, it may be waived if the circumstances require it. *Id.*

(finding justification for failure to timely exhaust administrative remedies where plaintiff "reasonably" misinterpreted a DOCS regulation); *Rodriguez v. Westchester County Jail Corr. Dep't,* 372 F.3d 485, 486 (2d Cir.2004) (holding prisoner's reasonable belief that he was not required to exhaust administrative remedies was a justification for failure to exhaust available administrative remedies). In the case at bar, plaintiff was specifically instructed that he was required to exhaust his administrative remedies prior to bringing a claim in federal court. "[P]risoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred. Such a rule would not comport with the purposes of the PLRA, . . . ." *Giano,* 380 F.3d at 677.

Relieving plaintiff of the statutory obligation to exhaust his administrative remedies because he failed to file a grievance until more than three years after his claim arose and more than seven months after this Court, in dismissing his first action, instructed him to exhaust his administrative remedies, "would eviscerate the PLRA exhaustion requirement." *Burns v. Moore,* No. 99 Civ. 0966, 2002 WL 91607, at *6 (S.D.N.Y. Jan. 24, 2002) (citing *Wright v. Morris,* 111 F.3d 414, 417 n. 3 (6th Cir.1997) (stating "it would be contrary to Congress' intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file administrative complaints and then complaining that administrative remedies are time-barred and thus not available.")). "[S]everal courts in this District have held that failure to file a timely grievance constitutes failure to exhaust administrative remedies as required by the PLRA." *Cole v. Miraflor,* No. 02 Civ. 9981, 2003 WL 21710760, at *2 (S.D.N.Y. July 23, 2003) (citations omitted); *see also Patterson v.*

*Goord,* No. 02 Civ. 0759, 2002 WL 31640585, at *1 (S.D.N.Y. Nov. 21, 2002).

Furthermore, defendant contends plaintiff's Complaint should be dismissed with prejudice because of his "repeated and completely voluntary failure to exhaust his available administrative remedies." (Def. Mem. Supp. Mot. Dismiss at 5.) Defendant argues that plaintiff's long delay in attempting to comply with the DOCS grievance system, without providing any reason for the delay, fully justified the administrative rejection of plaintiff's grievance. (*Id.*) Since plaintiff no longer has any administrative remedy available to him, defendant asserts that this matter should be dismissed with prejudice. (*Id.* at 5, 6.). Reluctantly, we must agree.

In view of the fact that plaintiff's attempt to file a grievance has been rejected because "the appropriate prison officials have found that there are no mitigating circumstances that would permit him to file an untimely grievance," the dismissal of this action must be with prejudice. *See Patterson,* 2002 WL 31640585, at *1 (citing *Polanco v. N.Y. Dep't of Corrs.,* No. 01 Civ. 0759, 2002 WL 272401, at *3 (S.D.N.Y. Feb. 26, 2002); *Byas v. State of New York,* No. 99 Civ. 1673, 2002 WL 1586963, at *2 (S.D.N.Y. July 17, 2002)); *see also Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004) (finding dismissal of case with prejudice proper in the absence of any justification or mitigating circumstances "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them").

Because plaintiff's Complaint is dismissed with prejudice for failure to exhaust administrative remedies, we need not reach the issue of whether plaintiff's claim is time-barred by the statute of limitations as contended by defendant.

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss is granted and the Complaint is dismissed with prejudice.

SO ORDERED.